FILED IN CHAMBERS
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAN 0 9 2017

James N. Hatten, Clerk

By: _____ Deputy Clerk

ROY H. SAVAGE,

        Plaintiff

v.

THOMAS D. CONRAD; MARGARET JOAN
CONRAD; WORLD FUND II, LP;
WORLD OPPORTUNITY FUND (BVI),
LTD; and WORLD OPPORTUNITY
MASTER FUND, LP,

        Defendants

CIVIL ACTION NO.
1:14-CV-4103-ODE

## ORDER

This case alleging federal securities and common-law fraud is before the Court on the following motions: (1) Plaintiff Roy H. Savage's ("Plaintiff") Motion for Summary Judgment [Doc. 129], with Defendants Thomas D. Conrad ("Mr. Conrad"), Margaret Joan Conrad ("Mrs. Conrad") (collectively, "the Conrads"), World Fund II, LP ("WFII"), World Opportunity Fund (BVI), LTD ("BVI"), and World Opportunity Master Fund, LP's ("Masterfund") response [Doc. 137] and Plaintiff's reply [Doc. 139]; (2) Defendants' Motion for Summary Judgment on Plaintiff's Claims [Doc. 141], with Plaintiff's response [Doc. 142] and Defendants' reply [Doc. 147]; and (3) Plaintiff's Motion for Summary Judgment as to Defendants' counterclaims [Doc. 146], with Defendants' response [Doc. 155].

For the reasons discussed below, Plaintiff's Motion for Summary Judgment on the question of liability [Doc. 129] is DENIED. Defendants' Motion for Summary Judgment [Doc. 141] is GRANTED. Plaintiff's Motion for Summary Judgment on the counterclaims [Doc. 146] is DISMISSED as untimely.

## I.   Undisputed Facts

The facts below are undisputed unless otherwise noted.   Mr. Conrad runs a number of investment companies, including WFII, BVI, and Masterfund, through Financial Management Corporation ("FMC") under the name "World Opportunities Funds."   Mrs. Conrad appears to have no involvement in or control over these entities.   Plaintiff is a semi-retired building contractor who has invested extensively in the past; he learned about Mr. Conrad and his companies through his brother-in-law who had invested with Mr. Conrad and "was doing well with him at the time" [Savage Dep., Doc. 153 at 27:4-6; see also id. at 27:22-24 ("He just said he was doing okay.")].   Since the death of Plaintiff's brother-in-law, his sister remains an investor in Mr. Conrad's funds.

Prior to investing, Plaintiff researched Mr. Conrad and his funds, spoke with him by telephone, and had lunch with him to discuss the managed funds.   Although Mr. Conrad encouraged Plaintiff to "think about it" [id. at 37:3-38:1], Plaintiff did not consult with an investment advisor.   Instead, on or about March 29, 2013, Plaintiff met with Mr. Conrad at his home office.   At this meeting, Mr. Conrad showed Plaintiff what he represented to be another investor's BVI Performance report for the nine months ending September 30, 2012, which showed a 17.7 percent "Year-to-Date Net Performance."   Mr. Conrad apparently said "this is what we're doing in BVI and World Opportunity" and "this is what [Plaintiff] can expect" [Id. at 115:18-117:24].   Plaintiff's response was "well, I don't expect to make that every month--every year, but it does sound very good" [Id. at 40:11-19].   The parties dispute the legitimacy of this document.

2

During this meeting, Plaintiff also apparently asked Mr. Conrad whether there were any "skeletons in [his] closet" of which Plaintiff should be aware [Savage Decl., Doc. 109-1 at 5].   Plaintiff argues that at this point Mr. Conrad should have informed him of a 1971 action by the Securities and Exchange Commission ("SEC").   The SEC concluded that Mr. Conrad "wilfully violated and wilfully aided and abetted violations of the registration provisions" of the Securities Act, and was "unfit[] for assuming any proprietary or supervisory role with a broker-dealer, [and] for engaging in the securities business in any capacity" [Doc. 15-1 at 119, 121].    Although Plaintiff argues that this order barred Mr. Conrad from the securities business for life, it only barred him from associating with any broker or dealer [Id. at 122-23].

Plaintiff also argues that Mr. Conrad should have informed him of a civil lawsuit filed against the Conrads in the Eastern District of Virginia in 1990.   This fraud action was settled and dismissed with prejudice within six months without any admission of guilt on the Conrads' part.

At the close of the March 29 meeting, Plaintiff gave Mr. Conrad a check for $750,000 made payable to WFII, and he executed the signature pages of the WFII Agreement of Limited Partnership and WFII Subscription Agreement.   Plaintiff also executed the signature page of the BVI Subscription Agreement and various American Estate & Trust LLC forms, which authorized the transfer of funds from Plaintiff's Pacific Life IRA account in the amount of $210,349.88.   Plaintiff asserts that he signed these two agreements without reading their contents because Mrs. Conrad stated that they were at the printer and

3

unavailable at that time. Subsequent to this meeting, both of Plaintiff's investments were transferred into the single Masterfund.

A few weeks after this meeting, Plaintiff received copies of the WFII Confidential and Private Placement Memorandum and Disclosure Document, Agreement of Limited Partnership, and Subscription Agreement, as well as the BVI Prospectus ("Agreements"). Defendants also assert that Plaintiff was provided with the BVI Subscription Agreement, although he disputes this. Plaintiff had a history of reading through similar investment documents before signing them, but he now insists that he did not understand them in this case. The documents contained warnings regarding the risks associated with investment and included merger clauses stating that there was no guarantee, either oral or written, that the funds' investment objectives would be achieved or that investors would receive a return of capital. They also contained clauses allowing Mr. Conrad to alter investment policy and strategy, as well as to suspend investors' rights to redeem, to withdraw capital, or to receive a distribution if it were in the funds' best interests.

Plaintiff eventually became displeased with the returns on the investment funds and, on October 28, 2014, demanded a full redemption, together with lost earnings, transfer fees, and interest, totaling $1,011,312.88. Of the $750,000 that Plaintiff invested in WFII, Defendants returned $677,604.41; of the $210,349.88 invested in BVI, $206,805.17 has been returned.

## II.  Procedural History

On December 29, 2014, Plaintiff filed suit against the Conrads, their son Dale, FMC, WFII, BVI, and the Masterfund [Compl., Doc. 1]. On February 26, 2015, Plaintiff amended his complaint [Doc. 15] and

4

voluntarily dismissed Dale Conrad and FMC [Doc. 16]. In an Order dated June 26, 2015, the Court dismissed all but the following claims: securities fraud pursuant to Section 10(b) and Rule 10b-5 (Count I) and common-law fraud pursuant to O.C.G.A. § 51-6-2 (Count III). The Court was clear that the only remaining permissible bases upon which to claim fraud in this case are: (1) Mr. Conrad's representation that Plaintiff could see a seventeen percent return on investment; (2) the Conrads' failure to disclose the prior SEC enforcement action; and (3) the Conrads' failure to disclose the prior civil suit in Virginia [Doc. 40]. On August 5, 2015, the Conrads asserted counterclaims against Plaintiff for defamation and tortious interference [Doc. 46].

The parties began engaging in discovery in August 2015, and discovery initially closed on April 5, 2016. The Court's June 29, 2016 Order re-opened and extended discovery for sixty (60) days from date of entry [Id.]. Discovery thus ended August 29, 2016, with dispositive motions due no later than thirty (30) days after, by September 28, 2016. See Fed. R. Civ. P. 56(b); LR 56.1(D), NDGa. On November 21, 2016, the Court excluded Plaintiff's purported experts-- Mr. Jamison as to the question of "opportunity cost" damages and Mr. Shirley as to whether Defendants' companies were Ponzi schemes and whether Plaintiff's investment was specifically used to pay out investors [Doc. 156].

On August 22, 2016, Plaintiff filed his Motion for Summary Judgment on the question of liability [Doc. 129]. Defendants responded on September 15, 2016 [Doc. 137], and Plaintiff replied on September 22, 2016 [Doc. 139]. Furthermore, on September 28, 2016, Defendants filed their Motion for Summary Judgment as to Plaintiff's

5

claims [Doc. 141]. On October 11, 2016, Plaintiff responded [Doc. 142], and on October 28, 2016, Defendants replied [Doc. 147]. Finally, on October 19, 2016, Plaintiff, as Counterclaim Defendant, filed a Motion for Summary Judgment as to Defendants'--Counterclaim Plaintiffs'--counterclaims [Doc. 146]. Defendants responded on November 3, 2016 [Doc. 155].

### III. Summary Judgment

Plaintiff seeks summary judgment as to the remaining fraud claims under Georgia law pursuant to O.C.G.A. § 51-6-2 and federal securities law pursuant to Section 10(b) and Rule 10-b-5 [Doc. 129]. Defendants have also independently moved for summary judgment as to the exact same claims [Doc. 141]. Accordingly, the Court will consider these motions together. Finally, Plaintiff has moved for summary judgment on the Conrads' counterclaims for defamation and tortious interference [Doc. 146]. The Court will address this claim in a separate section below.

#### A. Legal Standard

The Court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). Once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. Id. at 325. The non-moving party must go "beyond the pleadings" and

6

present evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks and citation omitted).

To be material, a fact must be identified by the controlling substantive law as an essential element of the non-moving party's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (internal quotation marks and citation omitted). For instance, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). In reviewing the record, the Court must construe the facts and make all reasonable inferences in favor of the non-moving party. Anderson, 477 U.S. at 255; Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

**B.   Motions for Summary Judgment on Fraud [Docs. 129, 141]**

Under Georgia law, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter;[1] (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." ReMax N. Atl. v. Clark, 244 Ga. App. 890, 893 (Ga. Ct. App. 2000) (citing

---

[1]"The legal term scienter has the following definition, that the false statement was knowingly made with a false design or was made in a severely reckless manner." Keogler v. Krasnoff, 268 Ga. App. 250, 252 (Ga. Ct. App. 2004).

7

<u>Klusack v. Ward</u>, 234 Ga. App. 178, 179 (Ga. Ct. App. 1998); O.C.G.A. § 51-6-2(a)) (footnote added).

Similarly, to sustain a claim for federal securities fraud under § 10(b) and Rule 10b-5, Plaintiff must show:

> (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

<u>FindWhat Inv'r Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1295 (11th Cir. 2011) (quoting <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1236-37 (11th Cir. 2008)) (internal quotation marks omitted).

Due to the similarity of these two causes of action and the parties' motions, the Court will address summary judgment as to the state and federal fraud claims together. <u>See Griffin v. State Bank of Cochran</u>, 312 Ga. App. 87, 93 (Ga. Ct. App. 2011) (noting that common law fraud and securities fraud require the same elements). Based on the Court's June 26, 2015 Order [Doc. 40], the remaining grounds of contention include: misrepresentation as to expected rate of return, and omission as to the prior SEC action and suit for fraud in Virginia. To the extent that Plaintiff attempts to re-raise claims already dismissed or to argue new claims [<u>see</u> Doc. 129-1 at 2-11], the Court declines to consider them.

### 1. Return Representation/Merger Clause

Plaintiff's first basis for claiming fraud is Mr. Conrad's representation in their March 29, 2013 meeting that the funds were making returns of 17.7 percent. However, Defendants contend that, under Georgia law, the merger clauses in the signed fund documents bar the claim. For example, the Partnership Agreement contains the

following language: "This Agreement constitutes the entire agreement among the parties hereto and supersedes all prior agreements, understandings and arrangements, oral or written, among the parties hereto with respect to the subject matter hereof" [Doc. 153-5 at 16, ¶ 15.13].    Similarly, the Subscription Agreement states:  "In evaluating the suitability of an investment in the Interest, the Subscriber has not relied on any representations, warranties or other information (whether oral or written) other than as set forth in the Memorandum" [Doc. 153-2 at 4(e)].

Under Georgia law, "[i]n written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement . . ., nor would the violation of any such alleged oral agreement amount to actionable fraud."  First Data POS, Inc. v. Willis, 273 Ga. 792, 794-95 (Ga. 2001) (internal quotation marks and citations omitted).  "A person who has received written disclosures of the truth may not claim to rely on contrary oral falsehoods."  Id. at 795 (internal quotation marks and citation omitted); see also Ouseley v. Foss, 188 Ga. App. 766, 768 (Ga. Ct. App. 1988) ("If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery." (internal quotation marks and citation omitted)).  Accordingly, under the general rule regarding merger clauses, Plaintiff's claims for fraud would be barred.

### a.    Mrs. Conrad's Fraud

Plaintiff responds that he was unable to read the Agreements before executing them due to Mrs. Conrad's fraudulent statements [Docs. 139 at 14, 142 at 15].  Failing to read a contract one has

9

executed is not usually a defense against its enforcement. <u>See</u> <u>Walton Guano Co. v. Copelan</u>, 112 Ga. 319 (Ga. 1900); <u>Cochran v.</u> <u>Carter</u>, 35 Ga. App. 286 (Ga. Ct. App. 1926). While an exception does exist when a party can show that his failure to read was brought about "by some misleading device or contrivance amounting to fraud on the part of the person with whom he was dealing," <u>Walton Guano Co.</u>, 112 Ga. at 319 (internal quotation marks and citation omitted), Plaintiff fails to show that the exception applies here.

Defendants have claimed a complete lack of evidence of fraud by Mrs. Conrad, and Plaintiff's entire response is to quote back to the Court its Order on the motions to dismiss: "Plaintiff has alleged sufficient facts to support a reasonable inference that because of the fraudulent behavior on the part of Joan Conrad intentionally withholding the Agreements, Plaintiff was unable to read the Agreements prior to signing and therefore cannot be bound by the merger clauses" [Doc. 142 at 16, quoting Doc. 40 at 14; <u>see also</u> Doc. 139 at 14, quoting Doc. 40 at 14]. The problem with this response is of course that the standard at the motion to dismiss stage is whether Plaintiff's complaint contains factual allegations sufficient "'to state a claim to relief that is plausible on its face,'" <u>Ashcroft v.</u> <u>Iqbal</u>, 566 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)), while at the summary judgment stage the non-moving party must go "beyond the pleadings" when the moving party shows a lack of factual dispute. <u>Celotex Corp.</u>, 477 U.S. at 324.

Plaintiff's response is based entirely on the pleadings and therefore fails to meet the standard required to refute Defendants' motion. Furthermore, even <u>sua</u> <u>sponte</u> considering the evidence in favor of Plaintiff, the only assertions of fraud against Mrs. Conrad

are Plaintiff's statements that she said these documents were at the printer [Docs. 107-1 at 4, 153 at 44:20-22]. Assuming this is true, the record is wholly devoid of evidence that this was untrue or that Mrs. Conrad made this statement with the intent to further a fraud, particularly given that she appears to have had no substantive involvement with her husband's business. Plaintiff even testified that it was Mrs. Conrad who actually mailed him these documents a few weeks later [Doc. 153, at 199:24-25], thus providing him with the Agreements to review.

Without evidence that Mrs. Conrad intended deception, Plaintiff is bound by the merger clauses, which bar his fraud claim based on the rate of return representation. Because these statements are also the extent of Plaintiff's evidence as to claims against Mrs. Conrad, summary judgment is granted to her on all bases.

### b. Ratification

Even assuming the merger clauses did not bar a fraud claim based on the rate of return representation at the pre-investment meeting, Plaintiff's subsequent ratification of these clauses would. "[A] merger clause is determinative if the defrauded party has not rescinded but has elected to affirm the contract." G. Mansour, Inc. v. Mansour's, Inc., 233 Ga. App. 7, 9 (Ga. Ct. App. 1998); see Avery v. Grubb, 336 Ga. App. 452, 458 (Ga. Ct. App. 2016) ("[A]lthough [plaintiff] alleges fraudulent inducement to enter into the agreement, given her affirmance and the agreement's express merger clause, there is no reliance absent a showing that [plaintiff] lacked knowledge of the contents of the agreement and, since the alleged representations were not stated in the agreement itself, the merger clause precludes a claim of fraud.").

11

Plaintiff clearly ratified here.  He testified that he received the full text of the agreements in the mail a few weeks after signing the signature pages in Mr. Conrad's office; he further testified that he read the documents then, as was his practice [Savage Dep., Doc. 153 at 112:11-12, 114:19-20].  This would have been in early to mid-April 2013 [Id. at 46:9-23].  Nevertheless, he waited until October 2014 to seek withdrawal from the funds.  By failing to promptly rescind, Plaintiff affirmed the investment contracts with Mr. Conrad.

Although Plaintiff asserts that he did not understand the content of these documents, which would prevent affirmance, his own deposition testimony indicates otherwise.  Construing the facts in favor of Plaintiff, he testified that he was previously told that Mr. Conrad's investments were making 17.7 percent and 20 percent, but that he understood at the time that these representations were at odds with the contents of the subsequently-sent documents [Id. at 56-57].  Plaintiff understood that the investment structure of the funds described in these documents "sure wasn't what [he] invested in" [id. at 51:16] and that, although he probably read the details, "that wasn't what [he] was told" [id. at 76:17-18; see also id. at 81:8-9 (testifying that Plaintiff recognized that these documents were describing a "private placement, and [he] didn't want to be part of that")].  Plaintiff also testified that when he read the Agreements, he "was probably too mad to think about what [he] had signed and what [he] had given [Mr. Conrad]" [Id. at 48:21-23].  Plaintiff stated that he "was very upset" about the contents of these documents [id. at 56:4; see id. at 65:13] because he "felt that the document [he] received was different than what [Mr. Conrad] told [him] in [their] meeting" [id. at 228:2-7].

Thus, Plaintiff's own uncontradicted testimony shows that he received and read the merger documents; his testimony evidences that he understood the discrepancy between their contents and what was said in the prior conversation with Mr. Conrad.  Plaintiff then waited eighteen months to pull his investment.  He thus ratified the investment agreement and is barred from prevailing in a fraud suit premised on alleged misrepresentations made prior to the ratification.  Summary judgment is granted to Defendants on the question of the rate of return representation.

### 2.  SEC Action/Reasonable Reliance

Plaintiff's second basis for a fraud claim is Mr. Conrad's failure to disclose an SEC enforcement action against him in 1971. The determination as to whether this omission was material would generally be a mixed question of law and fact better suited to a jury.  See TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976).  Even assuming materiality, however, Defendants respond that Plaintiff could not have justifiably relied on this omission, thus barring the claim.

"In a securities-fraud case, the plaintiff must show 'justifiable reliance' on the material misstatement" or omission. Damian v. Montgomery Cty. Bankshares, Inc., 981 F. Supp. 2d 1368, 1382-83 (N.D. Ga. 2013) (Batten, J.).  Showing reliance requires evidence that the "exercise of reasonable diligence" would not have allowed Plaintiff to "discover[] the truth behind the fraudulent omission or representation."  Id. at 1383 (citing Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1047 (11th Cir. 1987)).  As to the 1971 SEC action, Plaintiff does not dispute that it is available on the internet [Doc. 143 at 27] where he researched Mr. Conrad and

13

his investment funds [id. at 8].   When Plaintiff conducted the research that he says he did, in exercising due diligence, he should have found the 45-year old action.   Therefore, as a legal matter, Plaintiff could not reasonably have relied on the omitted SEC action, and summary judgment is granted to Defendants as to this basis for fraud.

### 3.   Virginia Case/Loss Causation

Plaintiff's third and final basis for alleging fraud is Mr. Conrad's failure to disclose a settled 1990 fraud suit from Virginia. Defendants respond that, even assuming materiality and justifiable reliance, Plaintiff cannot establish the required element of loss causation.    "The loss causation element of a Rule 10b-5 claim requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses."   FindWhat Inv'r Grp., 658 F.3d at 1309 (citing, e.g., Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005) (noting "common-law roots of the securities fraud action" and basing loss causation analysis on common-law tort causation)).   Plaintiff must thus "show a causal connection between the material misrepresentation and the loss," In re Sci. Atl., Inc. Sec. Litig., 754 F. Supp. 2d 1339, 1367 (N.D. Ga. 2010) (Story, J.) (citing Dura, 544 U.S. at 341); this he cannot do.

The undisputed evidence shows that in 1990, Defendants were sued for securities fraud, common-law fraud, and breach of a partnership agreement in the Eastern District of Virginia [Doc. 129-2 at 2-33]. Within six months, the parties in that case settled and dismissed with prejudice without any concessions on Defendants' part [Doc. 153-11].   In Plaintiff's deposition, he testified that the extent of his knowledge about this case is that every lawsuit and every filed claim

14

has some truth do it, and that Mr. Conrad is a liar and so must have lied when he denied the Virginia charges [Doc. 153 at 134:1-4, 137:15-138:4]. There is no evidence here of loss causation, that a fraud case settled by Defendants, without any evidence of wrongdoing on their part, twenty-three years before Plaintiff invested with them, caused him to lose money in that investment.

Without evidence of loss causation, Plaintiff cannot sustain a fraud claim based on the Virginia suit, and summary judgment is granted to Defendants on this point as well.

Thus, for the reasons stated above, Plaintiff's motion for summary judgment [Doc. 129] is DENIED. Defendants' motion for summary judgment [Doc. 141] is GRANTED.

### C.   Motion for Summary Judgment on Counterclaims [Doc. 146]

Finally, Plaintiff has filed a motion seeking summary judgment as to the Conrads' counterclaims dated October 19, 2016 [Doc. 146]. Federal Rule of Civil Procedure 56(b) and Local Rule 56.1(D) grant no more than thirty (30) days after the close of discovery in which to file dispositive motions for summary judgment. See Fed. R. Civ. P. 56(b); LR 56.1(D), NDGa. Because discovery ended on August 29, 2016 [see Doc. 121], these motions were due on September 28, 2016. Plaintiff's October 19 motion is thus untimely. Furthermore, he had already filed a motion for summary judgment on his own claims before close of the discovery period; it is unclear why he waited two months to file an additional one. The Court sees no good cause for extending the filing deadline, see Fed. R. Civ. P. 6(b), and Plaintiff has filed no reply to assert one. Plaintiff's motion [Doc. 146] is DISMISSED.

## IV.   Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment on liability [Doc. 129] is DENIED.  Defendants' motion for summary judgment on liability [Doc. 141] is GRANTED.  Plaintiff's motion for summary judgment on the counterclaims [Doc. 146] is DISMISSED as untimely.  In accordance with the findings above, the parties are DIRECTED to file a Consolidated Pretrial Order within thirty (30) days of the date of entry of this Order.

SO ORDERED, this ___9___ day of January, 2017.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE